IN THE CIRCUIT COURT OF MADISON COUNTY, MISSISSIPPI

BARRY W. GILMER                                                PLAINTIFF

**FILED**
THIS DAY
NOV 0 9 2007
LEE WESTBROOK
CIRCUIT CLERK

VS.                                       CIVIL ACTION NO. CI2007-0450-JR

TOBY TROWBRIDGE, JR., INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY AS
SHERIFF OF MADISON COUNTY, MISSISSIPPI;
SCOTT GRAVES, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY AS DEPUTY SHERIFF OF
MADISON COUNTY, MISSISSIPPI; MADISON
COUNTY, MISSISSIPPI; WESTERN SURETY COMPANY;
AND JOHN DOES 1 THROUGH 10                                     DEFENDANTS

## COMPLAINT

COMES NOW the Plaintiff, Barry W. Gilmer, and files this civil action against the Defendants, Toby Trowbridge, Jr., Individually And In His Official Capacity As Sheriff of Madison County, Mississippi; Scott Graves, Individually And In His Official Capacity As Deputy Sheriff of Madison County, Mississippi; Madison County, Mississippi; Western Surety Company and John Does 1 through 10, and in support thereof would most respectfully show unto the Court the following, to-wit:

### PARTIES

1.   Barry W. Gilmer is an adult bona fide resident citizen of Madison County, Mississippi, whose residential address is 300 Catlett Road, Madison, Mississippi 39130.

2.   Defendant, Toby Trowbridge, Jr., is the Sheriff of Madison County, Mississippi, and is a bona fide adult resident citizen of Madison County, Mississippi. Defendant Toby Trowbridge, Jr. was at all times material acting both individually and as the Sheriff of Madison County, Mississippi. As chief law enforcement officer for Madison County, Mississippi, Defendant Trowbridge's actions constitute, in part, both the policy and officially



EXHIBIT
A

condoned action of Madison County, Mississippi, thus rendering Madison County, Mississippi, liable to the Plaintiff in this lawsuit as a political entity.

3.    Defendant, Scott Graves, is a Deputy Sheriff of Madison County, Mississippi, and is a bona fide adult resident citizen of Madison County, Mississippi.  Defendant Scott Graves was at all times material acting both individually and as a Deputy Sheriff of Madison County, Mississippi.  As a law enforcement officer for Madison County, Mississippi, Defendant Graves' actions constitute, in part, both the policy and officially condoned action of Madison County, Mississippi, thus rendering Madison County, Mississippi, liable to the Plaintiff in this lawsuit as a political entity.

4.    Defendant, Madison County, Mississippi, is a body politic, operating and existing under the laws of the State of Mississippi.  At all times material hereto, Defendants Trowbridge and Graves have been and were acting under color of law, custom and usage of the political entity of Madison County, Mississippi.

5.    Defendant, Western Surety Company, is a South Dakota corporation doing business in the State of Mississippi and may be served with process of this Court by serving its designated resident agent CT Corporation System of Mississippi, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.  At all times material hereto, this Defendant was doing business in the State of Mississippi, was licensed to do business herein, and is amenable to the process and jurisdiction of this Court by virtue of having qualified to do business herein and having provided a performance bond to Defendant Toby Trowbridge, Jr. within the State of Mississippi.

6.    Defendants, John Does 1 through 10, are individuals, firms, corporations, corporate successors, governmental entities or other entities or individuals whose wrongful conduct caused or contributed to the injuries and damages of the Plaintiff.  The

specific identities of John Does 1-10 are unknown to the Plaintiff at this time, but will be identified, if necessary at a later date.

## BACKGROUND FACTS

7.    Barry W. Gilmer is a trial attorney in Madison County who as been practicing law for over thirty (30) years and maintains a good reputation for competency, honesty and good standing before all Mississippi State Courts, all United States District Courts in Mississippi, the Fifth Circuit Court of Appeals in New Orleans and the United States Supreme Court in Washington, D.C.  Gilmer's son, Matthew Gilmer, is a student at the University of Mississippi majoring in business and who has exhibited respect and compassion for law enforcement by leading charitable endeavors, including a massive fundraising effort which raised over $1,000,000.00 for the family of Police Officer Robert Langley, who was killed after he was dragged by a vehicle during a traffic stop in Oxford.

8.    Pam Miller and Tommy Miller own and occupy a home and four (4) acres of land along the east boundary of Gilmer's land. The Miller property and the Gilmer property are separated by a barrier of heavy undergrowth, trees, barbed wire and hog wire.

9.    On April 14, 2006, at approximately 4:00 p.m., Barry W. Gilmer's twenty (20) year old son, together with five (5) other college students, were shooting skeet on the east end of Barry W. Gilmer's land which is located at 300 Catlett Road in Madison, Mississippi.  Pam Miller made an emergency 911 call to the Madison County Sheriff's Office shortly after the skeet shoot commenced. The college students who were shooting skeet on Gilmer's property were trained in firearms safety and experienced in competitive skeet shooting.  The direction of fire was towards a thirty-five (35) acre excavation which will eventually become a lake.  The line of fire was from the lake's dam towards the west, which is in uninhabited 300 acre area which was owned entirely by Barry W. Gilmer.  Therefore, there was no physical possibility of injury to

persons or to property.

10.   Following the first 911 call, Pam Miller placed a second call to the Madison County Sheriff's Office in which she complained about the skeet shooting on Gilmer's property.  A Madison County Sheriff's Deputy then explained to Miller that shooting skeet in the County was completely legal.  Pam Miller then falsely alleged that her home had been fired upon, that the persons shooting skeet were fighting and that there was riotous conduct which was being fomented by Barry W. Gilmer and his son.  Miller further alleged that Gilmer and his son were "dangerous" and that they stated in "tremendous trouble", all of which placed Miller and her property in great danger.

11.   Following Miller's second 911 call, several Madison County Sheriff's Deputies, including Scott Graves, were dispatched to the Miller residence at 170 Kehle Road.  After investigating Miller's allegations, the multiple deputies found that the Miller house had not been fired upon and further found that no projectiles had been fired in the direction of the Miller property.  The evidence was overwhelming that the projectiles which had been fired by the college students who were shooting skeet had traveled to the west and had only landed upon the aforementioned excavated area. It was also conclusively established that no fights, misconduct, misdemeanors or felonies were threatened or had occurred on Gilmer's property and that neither Gilmer, his son nor any of the college students who were shooting skeet had engaged in any wrongdoing of any kind whatsoever.

12.   Consequently, Pamela Miller's two 911 calls were established as false as a matter of fact by the Sheriff's Department Deputies who investigated her criminal complaints. Therefore, Miller's false 911 calls took on the character of a crime prohibited by Mississippi Code Annotated §97-25-47. Despite the Sheriff's Deputies clear knowledge that Pamela Miller had

-4-

falsely reported that a crime was committed, Miller was not questioned regarding this offence, arrested or otherwise charged with a crime.

13. During the investigation which occurred at the Miller home, Sheriff's Deputy Scott Graves approached the Gilmer-Miller property line and called Matthew Gilmer to the fence. Deputy Graves then questioned Matthew Gilmer about his identity and the identity of the person who owned the property upon which the skeet shooting was taking place. Matthew Gilmer responded to all of Graves' instructions and requests for information in a polite and respectful manner. Deputy Graves then instructed Matthew Gilmer to contact Barry W. Gilmer and instruct him to come immediately to the property line to be questioned by Graves. Matthew Gilmer then contacted Barry W. Gilmer approximately one mile away by cellular telephone and communicated Deputy Graves' instructions. Barry W. Gilmer promptly drove across his property from a site on the west side of the property where he is constructing a home. Barry Gilmer then joined the college students near the fence line and waved to the Sheriff's Deputies to indicate that he was at the scene as requested. Deputy Graves saw Barry Gilmer, but did not approach the fence line or otherwise attempt to question Gilmer. Gilmer then returned to the home construction site after waiting approximately fifteen (15) minutes.

14. Approximately thirty (30) minutes after Barry Gilmer returned to his construction work, Matthew Gilmer contacted Barry Gilmer again by cellular telephone and stated that Deputy Graves was again requesting Barry Gilmer's presence at the fence line. Gilmer again drove across his property and signaled to Graves that he was at the scene. Gilmer was once again ignored by the Sheriff's Deputies despite repeatedly waving at them from several different locations on the property and despite the fact that the Sheriff's Deputies directly observed Gilmer's overtures. Gilmer

again waited for the Deputies for approximately fifteen (15) minutes and then Gilmer returned once again to his construction work.

15.    After returning to the home site, Gilmer was again contacted by his son who communicated that Deputy Graves had departed the Miller property, had driven six-hundred (600) feet onto the Gilmer property and was sitting in his patrol car directly behind the college students' pickup truck and staring menacingly at college students and Matthew Gilmer.    Matthew Gilmer then communicated to Barry Gilmer that the boys were frightened and that they assumed that they were being arrested.

16.    Upon being informed of the situation, Barry Gilmer then drove across his property yet again so that he could speak with Deputy Graves.    Gilmer observed that Deputy Graves had parked directly behind the pickup truck which was occupied by his son and the other college students.    Graves directly observed Gilmer's approach and saw Gilmer exit the vehicle and stand beside Deputy Graves' patrol car.    Despite seeing Gilmer, Graves once again ignored his presence.

17.    Gilmer then lightly tapped on the window of the patrol car in order to gain Deputy Graves' attention.    Deputy Graves then leaped from the patrol car and screamed at Barry Gilmer and stated that Gilmer should not "beat" on his car.    Gilmer then proceeded to calmly ask Deputy Graves what he wanted.    Deputy Graves once again screamed at Gilmer that he "did not have to answer" Gilmer's questions.    Gilmer then proceeded to request that Graves either issue a ticket to the boys, arrest the boys or arrest Barry Gilmer if that was the reason that Graves had entered upon Gilmer's property.    Deputy Graves then yelled at Gilmer that he "could not tell him what to do".    After it became apparent to Gilmer that Graves had not entered upon the property for any lawful purpose, Gilmer instructed Graves to either make an arrest, provide a lawful

reason for being on the property or remove himself from Gilmer's property.

18.   Deputy Graves did not respond to the request, but instead he violently grabbed Gilmer by the shoulder, spun Gilmer around and ordered Gilmer to place his hands behind his back.   Deputy Graves then handcuffed Gilmer in a manner which caused injury to Gilmer's hands.   Deputy Graves then told Gilmer that he was "under arrest". Gilmer then asked Deputy Graves what crime he was being charged with and Graves refused to tell Gilmer.   Gilmer further requested that he be allowed to retrieve his wallet from his vehicle so that he could post bond.   Graves also denied this reasonable request and ushered Gilmer into his patrol car and drove away.   The entire incident was witnessed by Gilmer's son, Matthew Gilmer, and several of Matthew Gilmer's college aged friends.

19.   Following Gilmer's physical arrest by Graves, Graves failed to provide Gilmer with any Miranda warnings and also failed to state what crime Gilmer was being charged with.   Instead, Graves recklessly and unlawfully detained Gilmer and began transporting him to the Madison County Detention Center.   After driving for several minutes, Deputy Graves pulled the patrol car onto the shoulder of the road.   Gilmer immediately became apprehensive due to this deviation from normal police procedure and began to fear that Deputy Graves would visit further physical violence upon him while he was helplessly handcuffed in the back of Graves' vehicle. Graves then impudently asked Gilmer "if he wanted to talk about this".   Given the threatening nature of the situation and given the fact that Graves was obviously baiting Gilmer into a physical confrontation, Gilmer requested that he be taken immediately to jail rather than risking any further abuses at the hands of Deputy Graves.   Gilmer was then transported to the Madison County Detention Facility.

20.   Following his booking, Barry Gilmer was charged with

disorderly conduct, resisting arrest and disobeying a law enforcement officer. Following his arrest, Defendant Graves unlawfully set a $1,000.00 cash bond and refused a corporate bail bond. Gilmer posted a one thousand-twenty five dollar ($1025.00) cash bond and was released from the Madison County Detention Center after being held for several hours even though an attorney with whom Gilmer practices had arrived with the bond funds shortly after the arrest.

21. After Barry Gilmer was released, he was transported to his property on Catlett Road by the attorney who had posted his bail. Gilmer rejoined his son and his son's college friends who had gathered together because they were concerned about Gilmer's well being given the unlawful and violent nature of his arrest. After Gilmer explained the situation, Gilmer asked his son to tell his friends to leave so that Gilmer could prepare for bed. As Matthew's friends attempted to exit the Gilmer property, at least five (5) Sheriff's Deputies entered upon Gilmer's land and blocked the gated entrance which is located on Catlett Road. The deputies refused to allow any of the college students to leave the property. Three of the patrol cars then entered further onto Gilmer's property and surrounded his home in a "SWAT" style action.

22. The Sheriff's Deputies then began searching Gilmer's property without consent. One of the Sheriff's Deputies entered into a closed travel trailer which was sitting near Gilmer's garage and proceeded to search it. During this search, the Sheriff's Deputy disturbed a young female college student who had retired to the travel trailer to use the toilet facilities.

23. After he became aware that something was transpiring outside of his home, Gilmer raised the window of the guest apartment which is located above his garage and called to the Sheriff's Deputy to stay out of the travel trailer unless he had a search warrant. The Sheriff's Deputy yelled back at Gilmer and

asked if Gilmer owned the house, guest house and travel trailer. Gilmer responded that he owned all three. The Sheriff's Deputy then ordered Gilmer to exit the guest apartment and Gilmer promptly complied with this order.

24. Gilmer was then confronted by Deputy Graves after Gilmer exited the guest apartment. Gilmer requested that Deputy Graves provide a reason why he was on the Gilmer property, and Deputy Graves responded by ordering Gilmer to place his hands behind his back. Deputy Graves then handcuffed Gilmer and his son and placed them in the back of a patrol car. Gilmer asked Deputy Graves what Matthew was being charged with and Graves responded that "Oxford" wants him. Gilmer responded to Graves by stating that the warrant issued by the Oxford Police Department was a mistake which had resulted from a Notice of a court appearance for a traffic ticket being sent to a wrong address. Gilmer further informed Graves that he had rectified this situation and that the legal documents showing this were located in a vehicle which was just a few feet away. Deputy Graves declined to look at the papers even though he was put on notice that the warrant was null and void. Gilmer then requested that Graves provide him with a copy of the arrest warrant. Graves responded by stating that he "did not have one" and that Matthew was "going to jail in Oxford".

25. Deputy Graves left Matthew Gilmer and Barry Gilmer handcuffed in the patrol car for approximately one hour with the lights of the patrol cars flashing so that both Matthew's college friends and Gilmer's distant neighbors could see that law enforcement was present at the Gilmer property. Gilmer, his son and several other witnesses then observed as the Sheriff's Deputies searched Gilmer's main house which was under construction, his guest house, his garage, a mobile home which had been located on the property during construction, a travel trailer, a tractor, a bushhog, track hoe, Bull Dozer, dump trucks and stacks of

construction materials located near the home. The extensive search extending as much as 100 yards beyond the house took place while Gilmer and his son were handcuffed in Graves patrol car or en route to the jail. The search was conducted not for the purpose of providing for the safety of the excessive police force set upon Gilmer and his property, but was carried out illegally in the hope that contraband might be discovered and used as a basis for yet further illegal charges. Several of the witnesses to the event reported that the Deputies were instructed to "find something" at the property.  Despite these extensive and illegal efforts, the Sheriff's Deputies found no incriminating evidence whatsoever during their extensive, illegal and warrantless search of Gilmer's property.

26.  Following the arrest, Gilmer was once again transported to the Madison County Detention facility and was charged with disorderly conduct, disobeying a law enforcement officer and contributing to the delinquency of a minor.  Gilmer was detained at the Madison County Detention Center until approximately 6:00 a.m. April 15, 2006, when he was released from custody after posting another one thousand-twenty five dollar ($1025.00) cash bond. Matthew Gilmer was transported to Oxford, Mississippi, by a Madison County Sheriff's Deputy and arrived in Oxford, Mississippi, at approximately 5:00 a.m. on April 15, 2006.

27.  Following the arrests of April 14, 2006, Barry Gilmer undertook an investigation of these events as a part of his defense of a frivolous civil lawsuit which was instituted by Pamela Miller and Tommy Miller.  During this investigation, Gilmer learned that Deputy Graves and Sheriff Trowbridge conspired with one another to fabricate baseless charges against Gilmer before Gilmer came in the presence of Deputy Graves.  During the deposition of Deputy Graves, Deputy Graves also admitted that he fabricated the charge of resisting arrest and that Gilmer had only moved his hands two

inches while he was being handcuffed.

28.   The facts discovered during this investigation clearly establish that Defendant Trowbridge ordered Gilmer's arrest and that Defendant Graves selected the charges at a time before Deputy Graves had his first encounter with Gilmer.   Deputy Graves unlawfully trespassed upon Gilmer's private property and laid in wait for Gilmer to arrive so that he could charge Gilmer with a crime which did not exist.   Graves fabricated the charges against Gilmer, falsely arrested Gilmer and falsely imprisoned Gilmer after Graves and Trowbridge conspired with each other to accomplish this unlawful plan with reckless disregard for Gilmer's safety and well being.

29.   On February 15, 2007, all charges against Barry W. Gilmer were dismissed as a matter of law by the Madison County Justice Court after said Court found that no crime or misdemeanor was committed or threatened by Gilmer or any of the youths on Gilmer's property and the Madison County Sheriff's Department lacked probable cause to arrest and jail Barry W. Gilmer on both occasions on April 14, 2006.   All charges stemming from both of the April 14, 2006, arrests were resolved in Barry W. Gilmer's favor as a matter of law.

30.   Upon further investigation Plaintiff has discovered that some members of the Madison County Sheriff's Department habitually and repetitiously engage in a course of conduct specifically designed and calculated to cause many others to be charged with nonexistent crimes and misdemeanors similar to the events complained of herein by Plaintiff, while on the other hand failing and refusing to charge or arrest other individuals who commit offenses in their very presence basing the election to charge and arrest upon social status, economic status, political influence, wealth and privilege, or the lack thereof.

31.   Said deliberate course of wrongful conduct, pattern and

practice includes, but is not limited to,

a. Fabrication of false charges of disorderly conduct, resisting arrest, disobeying a law enforcement officer, disturbing the peace and other misdemeanors when the arresting deputy desires to charge a person but has no legal basis for any charge;

b. Fabrication of alcohol related charges by falsely asserting breathalyser refusal when the test in fact shows no violation but the deputy desires to convert the case to a non-existent DUI refusal charge;

c. Fabrication of alcohol possession charges by minors or open container laws;

d. Fabrication of facts and circumstances to attempt justification of savage jail house beatings of inmates or recent arrestees when said persons are completely innocent of engaging in provoking behavior, committing a criminal offense at the time of the beatings or placing law enforcement personnel in danger of harm;

e. Burning of medical records and other papers in an attempt to avoid proof of claims of inmates for willful neglect of inmate medical needs, withholding of prescribed medications, intentional infliction of injuries, beatings and other abuses;

f. Formation and maintenance of a "Goon Squad" for the purpose of carrying out physical beatings with issued equipment such as weighted gloves and other devices;

g. Denying recent arrestees access to cash money removed from the arrestee so as to prevent the arrestee from posting bond and refusing to accept corporate surety bond as bail;

h. Knowingly allowing certain personnel to lie relating to personnel matters while terminating the employment of others for related offenses;

i. Gender and race discrimination in personnel matters relating to maintenance, promotions and termination of employment.

32.   All of the above wrongful misconduct is carried out and committed in direct, reckless disregard of the offended individuals' safety and well being at a time when either no criminal offense is being or has been committed or there is no casual nexus to the wrongful acts of such deputies or jail employees and criminal activity alleged against the injured party.

## COUNT ONE
## TRESPASS AND UNLAWFUL SEARCH

33.   Plaintiff adopts and incorporates herein by reference all allegations contained and set forth above.

34.   At all times material herein, Plaintiff has occupied and has been vested with the exclusive use, possession, and ownership of a certain dwelling, lot and land commonly referred to as 300 Catlett Road located in Madison County, Mississippi.   The aforementioned property is one of Plaintiff's residences.

35.   On April 14, 2006, Defendant Graves trespassed upon the Plaintiff's property which is located at 300 Catlett Road without the permission of Plaintiff and without legal cause.

36.   The trespass occurred when Defendant Graves entered upon Gilmer's land prior to the first arrest of Gilmer after having concluded his investigation which revealed that no crime had been committed or threatened relative to the shooting of skeet on the Gilmer property.   Despite this conclusion, Officer Graves trespassed onto Gilmer's land by driving approximately 600 feet towards a pond dam upon which the Plaintiff's son and others had been shooting skeet.   This land was clearly private property and Defendant Graves was required to leave the public road and circumvent a fence, pass through a gated opening in order to gain access to said property.

37.   Defendant Graves entered upon Gilmer's property for the purpose of harassing those persons who were lawfully upon Gilmer's land and for the purpose of unlawfully arresting Gilmer after

-13-

Defendant Trowbridge conspired with Deputy Graves to falsely charge Gilmer with disorderly conduct. Furthermore, Gilmer instructed Deputy Graves to leave the property at a time when Graves had absolutely no legal authority to come upon said land. Deputy Graves failed to obey this lawful request and became a trespasser as a matter of law. Instead, Graves falsely arrested and detained Gilmer while trespassing on his private property. Gilmer was falsely charged with disorderly conduct, resisting arrest and disobeying a law enforcement officer.

38. The unlawful search occurred when Officer Graves and no fewer than five (5) Madison County Sheriff's Deputies unlawfully searched Plaintiff's property without the Plaintiff's permission and without a warrant or probable cause prior to the second arrest of Gilmer. The aforementioned Madison County Sheriff's Deputies surrounded the Plaintiff's residence with patrol cars and searched the Plaintiff's dwelling house, travel trailer, temporary mobile home, guest house, garage and other structures and heavy equipment without consent and without probable cause. The search extended over several acres as far as 100 yards beyond the buildings and improvements. Plaintiff repeatedly issued a lawful request to the Madison County Sheriff's Deputies and Defendant Graves that they leave his property. Despite this lawful request, the Deputies continued to illegally search Gilmer's land, home and other structures and personal property. Said Deputies then unlawfully detained Gilmer while the search continued before eventually giving up on finding non-existent contraband and charged him with false crimes.

39. Defendant Madison County, Mississippi, allowed its agents to unlawfully trespass upon the Plaintiff's land and this action was initiated and/or ratified by Madison County Sheriff Toby Trowbridge on two separate occasions.

40. There exists no justification in law for the Defendants'

blatant trespass upon the Plaintiff's land, home and property since the Defendants' had no probable cause to enter upon the Plaintiff's land and the Plaintiff had not assented to the entry upon his land. Furthermore, despite repeated, lawful requests which were issued to the Madison County Sheriff's Deputies by Gilmer, said Deputies refused to vacate Gilmer's land, home and property. This encroachment and trespass was undertaken with reckless disregard for the Plaintiff's safety, well-being and in violation of his property rights.

41. As a direct and proximate result of the trespass of the Defendants as described above, Plaintiff has sustained damages and injuries as described hereinafter.

### COUNT TWO
### CIVIL CONSPIRACY

42. Plaintiff adopts and incorporates herein by reference all background facts and other allegations contained and set forth above.

43. Defendant Toby Trowbridge has chronic personal knowledge of Pamela Miller and Tommy Miller's accounts of alleged facts giving rise to a boundary dispute claimed by the Millers against Gilmer. More particularly, Trowbridge's wife teaches piano lessons to the minor child of Pamela Miller and Tommy Miller. Sheriff Trowbridge and the Millers also interact socially and attended the same church at the time of the aforementioned incident. Despite these undisputed personal connections, Defendant Trowbridge denied, under oath, any knowledge of the ongoing civil litigation between the Millers and Gilmer regarding the boundary dispute.

44. During the investigation of this arrest, a tape of conversations between Graves and Trowbridge was provided to Gilmer pursuant to a subpoena which was issued in the Miller tort case. Said tape revealed that Trowbridge stated to Graves that Pamela Miller had been complaining to Trowbridge about Gilmer prior to the

subject incident and that Trowbridge and Miller had "discussed it before".

45. Sheriff Trowbridge, in conspiracy and collusion with Pamela Miller and Tommy Miller, related the Miller's false allegations to Deputy Graves with the specific intent of causing the wrongful arrest of Barry Gilmer. Sheriff Trowbridge instructed Deputy Graves to choose which charges he could fabricate in the given situation. Graves then attempted to lure Gilmer off of his own property so that he could be charged with disorderly conduct or disturbing the peace. When these attempts failed, Deputy Graves unlawfully trespassed on Gilmer's property in an attempt to lure him into a confrontation. When Graves failed to provoke a confrontation, Graves was left with no choice but to completely manufacture charges against Gilmer after Gilmer attempted to speak with him.

46. This attempt to charge Gilmer was then repeated during the second, subsequent arrest when multiple Sheriff's Deputies were instructed by Sheriff Trowbridge to enter upon Gilmer's property and begin an illegal search of his home and property. When no incriminating evidence was located by the Sheriff's Deputies, Defendant Graves once again fabricated charges with no basis in fact and arrested Gilmer without legal cause.

47. Defendant Graves became the operative force of the combination of Trowbridge and the Millers in unlawfully charging Barry W. Gilmer with crimes which he did not commit, by trespassing upon his property, to slandering him, to falsely imprisoning him, falsely arresting him and intentionally inflicting emotional distress upon him. Graves was informed of overt acts, took part is said acts and was directed to carry out the will and intent of Trowbridge and the Millers. Each of these persons, Trowbridge, Graves, Pamela Miller and Tommy Miller, agreed with each other and each acted in concert with one another in an effort to cause

-16-

unlawful injury to Barry W. Gilmer.

48.    Furthermore, Sheriff Toby Trowbridge and Deputy Scott Graves each committed overt acts in the perpetuation of the conspiracy. Specifically, Toby Trowbridge ordered the false arrest and false imprisonment of Plaintiff through Deputy Scott Graves who obeyed the arrest order. The proposed criminal charges and arrest of Barry W. Gilmer were preconceived and falsely fabricated by the conspirators prior to said Plaintiff being lured to the site of the initial arrest.

49.  As a direct and proximate result of this civil conspiracy as described above, Plaintiff has sustained damages and injuries as described hereinafter.

50.  All complained of above by Plaintiff was committed by Defendants Trowbridge and Graves in reckless disregard of the safety and well being of Plaintiff when Plaintiff was not engaged in criminal activity.

### COUNT THREE
### FALSE ARREST

51.  Plaintiff hereby adopts and incorporates herein by reference all allegations contained and set forth above.

52.  Each of the Defendants, acting in conspiracy and in concert with one another, caused the unlawful false arrest of Barry W. Gilmer.  Sheriff Trowbridge and Deputy Graves, acting with full knowledge and without probable cause, caused Barry W. Gilmer to be unlawfully arrested on false charges and for crimes which he did not commit.

53.  The Defendants' act of causing the false arrest of Gilmer was wrongful and constituted reckless disregard for Gilmer's safety and well being when Plaintiff was not engaged in any criminal activity.

54.  As a direct and proximate result of the acts of the Defendants as described above, Plaintiff has sustained damages and

injuries as described hereinafter.

## COUNT FOUR
### FALSE IMPRISONMENT

55.  Plaintiff  hereby  adopts  and  incorporates  herein  by reference all allegations contained and set forth above.

56.  Defendants', by and through the acts enumerated above, unlawfully imprisoned Barry W. Gilmer by unlawfully detaining him at the Madison County Detention Facility on two separate occasions beginning on April 14, 2006, and continuing through April 15, 2006. Each of these detentions was unlawful insofar as Deputy Scott Graves did not have probably cause to enter upon Gilmer's property at any time and Gilmer did not commit any of the crimes with which he was charged.   Furthermore, it is uncontroverted that Sheriff Trowbridge, together with Deputy Graves, conspired to charge Gilmer with a crime before Gilmer ever encountered Deputy Graves.   This unlawful conspiracy led, in turn, to the unlawful detention and false imprisonment of Gilmer.

57.  The Defendants' act of causing the false imprisonment of Gilmer was wrongful and constituted reckless disregard for Gilmer's safety and  well  being  when  Plaintiff  was  not  engaged  in  any criminal activity.

58.  As a direct and proximate result of the acts of the Defendants as described above, Plaintiff has sustained damages and injuries as described hereinafter.

## COUNT FIVE
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

59.  Plaintiff  hereby  adopts  and  incorporates  herein  by reference all allegations contained and set forth above.

60.  Defendants knew or should have known that the wrongful arrest and detention of the Plaintiff would cause severe emotional distress to the Plaintiff.

61.  The Defendants'  actions  were  intentional,  willful, outrageous and in reckless disregard of the health, well being and

rights of the Plaintiff.

62.   The Defendants' actions have directly and proximately caused several emotional distress and actual damages to the Plaintiff.   The aforesaid actions of the Defendants warrant the imposition of punitive damages and reasonable attorneys' fees because of the egregious nature of their acts and the vulnerability of the Plaintiff as a private citizen of the State of Mississippi who was abused by law enforcement officers.

**COUNT SIX**
**ASSAULT AND BATTERY**

63.   Plaintiff adopts and re-alleges all facts mentioned above.

64.   Defendants owed to Plaintiff a duty not to subject him to assault and battery.   During the unlawful arrest as stated above, Defendants applied unnecessary force, assaulted the Plaintiff and committed a battery upon Plaintiff by causing contact with Plaintiff that was offensive to Plaintiff.

65.   The Defendants' act of assaulting and battering Gilmer was wrongful and constituted reckless disregard for Gilmer's safety and well being when Plaintiff was not engaged in any criminal activity.

66.   As a direct and proximate result of the acts of the Defendants as described above, Plaintiff has sustained damages and injuries as described hereinafter.

**COUNT SEVEN**
**ABUSE OF PROCESS**

67.   Plaintiff adopts and re-alleges all facts mentioned above.

68.   In committing the acts describe above each Defendant abused and perverted the criminal processes of the criminal justice system of Madison County Mississippi for the purpose of obtaining the detention and/or arrest and imprisonment of Barry W. Gilmer when such arrest could not be obtained lawfully since no crime or

misdemeanor was committed or threatened. Defendants knew that no crime or misdemeanor was threatened or occurred at the time the false report was made as established by the subsequent investigation of the numerous law enforcement personnel summoned to the Plaintiff's property.

69.   The Defendants' abuse of process relative to Gilmer was wrongful and constituted reckless disregard for Gilmer's safety and well being when Plaintiff was not engaged in any criminal activity.

70.   As a direct and proximate result of the acts of the Defendants as described above, Plaintiff has sustained damages and injuries as described hereinafter.

**COUNT EIGHT**
**MALICIOUS PROSECUTION**

71.   Plaintiff adopts and re-alleges all facts mentioned above.

72.   Defendants caused the institution of criminal proceedings against Plaintiff as described above, falsely and without probable cause for the malicious purpose of causing injury to Plaintiff.

73.   All criminal charges were terminated in Plaintiff's favor by dismissal of said charges for lack of probable cause and the failure of the Sheriff to show the existence of any crime or misdemeanor. Said charges were dismissed as a matter of law after a full hearing on February 15, 2007.

74.   The Defendants' act of causing maliciously prosecuting Gilmer was wrongful and constituted reckless disregard for Gilmer's safety and well being when Plaintiff was not engaged in any criminal activity.

75.   As a direct and proximate result of the acts of the Defendants as described above, Plaintiff has sustained damages and injuries as described hereinafter.

## COUNT NINE
## EXCESSIVE USE OF FORCE

76.  Plaintiff  adopts  and  re-alleges  all  facts  mentioned above.

77.  Defendants used force which was greater than that which was reasonably necessary in handcuffing Gilmer following his two arrests.  Gilmer did not resist or otherwise struggle while he was being handcuffed.  In fact, Gilmer voluntarily presented his hands to Deputy Graves during both arrests when he was commanded to do so.  Despite Gilmer's absolute compliance with Deputy Graves' unlawful orders, Graves utilized excessive force when handcuffing Gilmer which resulted in physical injury to Gilmer.

78.  The Defendants' act of using excessive force to handcuff Gilmer was wrongful and constituted reckless disregard for Gilmer's safety and well being when Plaintiff was not engaged in any criminal activity.  The actions of the Defendants were grossly disproportionate to the need for action under the circumstances.

79. As a direct and proximate result of the acts of the Defendants as described above, Plaintiff has sustained damages and injuries as described hereinafter.

## COUNT TEN
## CLAIMS AGAINST DEFENDANT WESTERN SURETY COMPANY

80.  Plaintiff  adopts  and  re-alleges  all  facts  mentioned above.

81.  Defendant Western Surety Company provided Bond Number 53513555 to Defendant Toby Trowbridge, Jr. in the amount of One Hundred Thousand Dollars ($100,000.00).  (Bond attached hereto as Exhibit "A") Said bond is a performance bond which requires that Defendant Trowbridge faithfully perform the duties of his office.

82.  As is stated above, Defendant Trowbridge failed to faithfully perform the duties of his office and has therefore breached his duty of faithful performance as required by the bond

by acting in reckless disregard of the safety and well-being of the Plaintiff as stated above. Defendant Trowbridge's breach of his duties as stated herein obligates Western Surety to pay unto Plaintiff all damages occasioned by Defendant Trowbridge's breach of his duties to Plaintiff. Defendant Western Surety Company is therefore liable to Plaintiff for the full penal amount of said bond, One Hundred Thousand Dollars ($100,000.00).

### REQUEST FOR RELIEF

83. WHEREFORE, PREMISES CONSIDERED, Plaintiff sues and demands judgement together with attorney fees and court costs aggregating the sum of ONE MILLION DOLLARS ($1,000,000.00), together with pre-judgment and post judgment interest.

Respectfully submitted,
BARRY W. GILMER

BARRY W. GILMER, MSB# 4856
REID S. BRUCE, MSB# 101006
ATTORNEYS FOR PLAINTIFF

GILMER LAW FIRM
7712 Old Canton Road
Post Office Box 919
Madison, Mississippi 39130
Telephone (601) 898-4491
Facsimile (601) 898-9830

-22-